```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,        )
                                 )
     vs.                         )    Criminal No. 08-254
                                 )
GERALD TILLMAN,                  )
          Defendant.             )
```

                    MEMORANDUM AND ORDER

Gary L. Lancaster,
Chief Judge.                                    October 26, 2009

Defendant Gerald Tillman moves the court to suppress any reference during trial to an April 8, 2005, stop that resulted in the seizure of $19,000 in cash from his vehicle. [Doc. No. 88]. Defendant has standing to present this motion. The principal issues presented by the motion are whether the stop was lawful and whether defendant's verbal consent to the search was knowing and voluntary. A suppression hearing was held on October 13, 2009.

Defendant contends that the stop and search of his Gran Prix was unlawful in violation of the Fourth Amendment of the United States Constitution because it was made 1) without a warrant, 2) not pursuant to any exception to the 4th Amendment, and 3) without valid consent. Accordingly, defendant argues that the court should suppress any reference to the stop, the currency, and a firearm found but not seized.

The government opposes the motion, contending that the stop was lawful and the defendant's consent to search the vehicle was knowing and voluntary. [Doc. No. 93].

The court has considered the evidence introduced at the suppression hearing and is prepared to rule. For the following reasons, defendant's motion to suppress is denied.

I.   <u>FINDINGS OF FACT</u>

The testimony heard at the suppression hearing was contradictory. As such, the court had to assess witness credibility. In doing so, the court considered the traditional factors of assessing a witness's credibility, including: 1) the opportunity and ability of the witness to see or hear or know the things about which the witness testified; 2) the quality of the witness's knowledge, understanding, and memory; 3) the witness's appearance, behavior, and manner while testifying; 4) whether the witness has an interest in the outcome of the case or any motive, bias, or prejudice; and 5) whether the witness's testimony was consistent or inconsistent with other evidence.

Taking those factors into consideration, we find the testimony of Detective Dominic Falascino to be credible. The credible evidence introduced at the hearing establishes the following:

On April 8, 2005, the Pittsburgh Police Department received an anonymous tip that four black males were at the corner of North Charles Street and Kenwood Avenue on Pittsburgh's North Side, putting on bulletproof vests and displaying guns. That area

on the North Side of Pittsburgh is known for gang activity. According to the tip, the men were driving a black Chevy Suburban and a green Pontiac Gran Prix, both with tinted windows.  Detective Falascino and three other plain-clothed officers reported to the scene within minutes, arriving in three unmarked police cars.  The officers identified a Suburban and a Gran Prix, which were traveling in tandem, that matched the description from the tip and followed them.  The two cars split up, and Falascino followed the Gran Prix to a parking lot located on Bizet Way.  At that point, Tillman, who was the driver, and a passenger exited the vehicle. Falascino and the other officers then stopped, exited their vehicles and approached on foot with their guns drawn.

The officers told Tillman about the tip and the information it conveyed.  Tillman, looking relieved, explained that there had been a misunderstanding and that he and his friend had paint ball equipment in his car.  At that point, the tension eased and the mood lightened considerably.  Falascino and the other detectives holstered their guns, and patted Tillman and his passenger down for weapons.  At no point was Tillman handcuffed. Tillman told the officers that in addition to the paint ball equipment, he also had a real firearm in the car that was registered to him.  Detective Falascino asked Tillman if he could enter the car and retrieve the firearm, to which Tillman consented.

In the car, the police found a Bryco semi-automatic

pistol under the floormat of the rear passenger side.  The pistol was licensed and registered to Tillman.  Near where the handgun was recovered, however, the officers noticed bulges in two pockets attached to the back of the front driver and passenger side seats.  Suspecting that the bulges may contain additional weapons, the police searched the bulges and found three bundles containing $19,000 in cash.  When questioned about the money, Tillman responded that it came from "his people."  Pressed further, Tillman said the money came from his aunt and uncle and that it was a loan.  However, he could not say what the loan was for, nor could he provide a phone number for his aunt to confirm the origin of the cash.  He also did not know how much money there was in the bundles.  Tillman was not placed under arrest at this time, and his gun was returned to him, but the officers seized the cash.

II.   <u>STATEMENT OF REASONS</u>

Tillman contends that the stop was unlawful and that his consent to search the car was involuntary.  The Fourth Amendment protects people against unreasonable searches and seizures.  Warrantless searches are <u>per se</u> unreasonable subject only to a few specifically established and well delineated exceptions.  No warrant authorized the search here, therefore, the burden is on the government to prove by a preponderance of the evidence that the search fell within one of the recognized exceptions to the warrant

requirement.

    A.  The <u>Terry</u> Stop

It is well established that "an officer may . . . conduct a brief, investigatory stop when the officer has a reasonable articulable suspicion that criminal activity is afoot." <u>Illinois v. Wardlow</u>, 528 U.S. 119, 123 (2000) (quoting <u>Terry v. Ohio</u>, 392 U.S. 1, 30 (1968)). Reasonable suspicion is "a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." <u>Wardlow</u>, 528 U.S. at 123. The Supreme Court has explained that "reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." <u>Alabama v. White</u>, 496 U.S. 325, 330 (1990). In determining whether the officers had reasonable suspicion in this case, the court must examine the "totality of the circumstances." <u>United States v. Sokolow</u>, 490 U.S. 1, 8 (1989). Officers can base reasonable suspicion on information offered by another person. <u>Adams v. Williams</u>, 407 U.S. 143, 147 (1972).

However, "[w]hether a seizure is an arrest or a merely an investigatory detention, depends on the reasonableness of the level of intrusion under the totality of the circumstances." <u>Posr v.</u>

Doherty, 944 F.2d 91, 98 (2d Cir. 1991).  To prevent a Terry stop from crossing the line into a de facto arrest, officers "must employ 'the least intrusive means reasonably available' to effect their legitimate investigative purposes." United States v. Newton, 369 F.3d 659, 674 (2d Cir. 2004) (quoting Florida v. Royer, 460 U.S. 491, 500 (1983)).  "Among the facts generally deemed relevant are 1) the length of time involved in the stop; 2) its public or private setting; 3) the number of participating law enforcement officers; 4) the risk of danger presented by the person stopped; and 5) the display or use of physical force against the person stopped, including firearms, handcuffs, and leg irons." United States v. Newton, 369 F.3d 659, 674 (2d Cir. 2004).

In this case, we find that the police officers executed a constitutional Terry stop - not an arrest.  See United States v. Askew, 403 F.3d 496, 507 (7th Cir. 2005) (holding that officers conducted a Terry stop and not an arrest even though agents blockaded Askew's car and approached with guns drawn).  The officers had reasonable suspicion to approach Tillman with guns drawn and question him.  Officers had received information that four African American males, who were driving a black Chevy Suburban and a green Pontiac Gran Prix, with tinted windows, and who were seen armed and wearing bulletproof vests.  Upon arriving on the scene, which only took a few minutes, the officers identified the cars from the tip.  Tillman admitted that the car he

6

drove was a green Pontiac Gran Prix and had tinted windows. Detective Falascino testified that the area is known for gang related activity.  The officers, acting on that information, approached Tillman on foot with their guns drawn, and informed him of why they were there.  The fact that the officers approach a car with guns drawn in order to protect themselves does not automatically escalate a <u>Terry</u> stop into an arrest.  <u>See</u> <u>Couden v. Duffy</u>, 446 F.3d 483, 494 n.5 (3d Cir. 2006); <u>United States v. Perea</u>, 986 F.2d 633, 644 (2d Cir. 1993). Such actions may be taken by officers during an investigative <u>Terry</u> stop to protect themselves or others "if the circumstances reasonably warrant such measures."  <u>Flowers v. Fiore</u>, 359 F.3d 24, 30 (1st Cir. 2004). Because they had a reasonable articulable suspicion that Tillman may have been armed, the officers acted properly to protect themselves in approaching and questioning Tillman with guns drawn. Therefore, we conclude that Tillman was never placed under a de facto arrest, and that the police did not violate his Fourth Amendment rights by engaging in this <u>Terry</u> stop.

      B.   <u>Consent</u>

Tillman next contends that the consent he gave to search his car was not voluntary because it was given under duress. Acting pursuant to a voluntarily given consent is an exception to the government's search warrant requirement and is constitutionally permissible.  <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 219 (1973).

The consent may be express or implied but it must be voluntary. The issue of whether a defendant has voluntarily consented to a warrantless search is a question of fact and will be determined by the totality of the circumstances. See id. at 223.

The factors used to determine whether a defendant voluntarily consented to a warrantless search include: the defendant's knowledge of his constitutional right to refuse consent; his age, intelligence, and education; the degree to which he cooperates with the police; his attitude about the likelihood of discovering contraband; by the defendant's prior actions or agreements; and, by the facts and circumstances surrounding the search itself. Although each of these factors is relevant to the issue, no single factor is dispositive.

Here, we find that Tillman's consent to search the vehicle was knowing and voluntary. Both parties stated that upon learning that Tillman had paint ball equipment, the mood of the encounter lightened. Police officers holstered their weapons. Tillman then admitted to the officers that he had a real gun in the car, along with the paint ball equipment. Tillman admitted this because he knew he had a license to carry the weapon, so he did not think there would be a problem. As a result, we find that Tillman's consent to search the vehicle was voluntary and not made under duress or threat, and, therefore, did not run afoul of the

Fourth Amendment.[1]  Once the consent was granted to search for the weapon, it was clearly reasonable for the officers to investigate the bulges in the back pouches of the car near where the gun was found to determine whether they contained additional weapons.  The fact that the bulges turned out to be an inordinate amount of cash does not render their seizure invalid.

---

[1]   We note parenthetically that during trial, Tillman raised for the first time the issue of whether statements he made to the police as to the origin of the money should be suppressed as a violation of the Fifth Amendment.  Because he failed to raise this issue in a motion to suppress before trial as required by Federal Rule of Criminal Procedure 12(b)(3)(c), we find that he has waived it.  See United States v. Dewitt, 946 F.2d 1497, 1499-1500 (10th Cir. 1991)(citing Steagald v. United States, 451 U.S. 204, 209 (1981)).

   Nevertheless, even if he had properly raised the issue, the record does not support the contention that Tillman's statements to police were made during a custodial interrogation, which would have invoked Miranda v. Arizona, 384 U.S. 436 (1966).  Here, as noted, Tillman was never placed under de facto arrest but was subject to a Terry investigatory stop.  The police had holstered their weapons, and had obtained Tillman's voluntary consent to search the vehicle.  The money was found incidental to their search for the gun that Tillman admitted was in the car.  During a Terry stop, the police are permitted to ask questions without invoking the protections of Miranda.  See Berkemer v. McCarthy, 468 U.S. 420, 442 (1984) (concluding that because defendant was not taken into custody for the purposes of Miranda until he had been arrested, statements made prior to that point were admissible).  As a result, the police questioning about the origins of the $19,000 did not amount to a custodial interrogation requiring the administration of Miranda.

III.   Conclusion

The government has sustained its burden of proof in this instance. The credible evidence establishes that defendant's constitutional rights were not violated on April 8, 2005. Accordingly, defendant's motion to suppress is DENIED.

```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA,      )
                               )
     vs.                       )    Criminal No. 08-254
                               )
GERALD TILLMAN,                )
          Defendant.           )
```

## ORDER

AND NOW, this 26th day of October, 2009, IT IS HEREBY ORDERED that the defendant's motion to suppress [doc. No. 88] is DENIED.

BY THE COURT:

<u>s/Gary L. Lancaster</u>      , J.

Gary L. Lancaster,
Chief Judge,
United States District Court


cc:  All Counsel of Record